## A90A0377. JOHNSON v. THE STATE.
(392 SE2d 280)

SOGNIER, Judge.

In a bench trial, Tommy Ray Johnson was convicted of armed robbery, robbery by intimidation, fleeing and eluding, improper lane usage, and driving without insurance. He appeals from the judgment entered on the court's verdict.

1. In two enumerations of error appellant questions the suffi-

ciency of the evidence to support his convictions for armed robbery and robbery by intimidation, contending that as to the armed robbery charge there was no weapon and no reasonable apprehension of same, and that as to the latter conviction there was no evidence of intimidation.

(a) The evidence adduced at trial established that on the night of October 23, 1988, Andrea Perry was working as a cashier at a service station and food mart in Savannah when she was approached by a man who told her he had no money and no place to go for the night. She talked with him briefly and suggested that he call a local relief organization for assistance. In response, the man said, "to keep me from shooting you, why don't you open the register and give me the money?" whereupon she gave him the cash in the register. Perry testified that while she did not see a weapon, given his statement and the way he kept one hand concealed, she assumed he had a gun. She identified appellant as the perpetrator in a photographic lineup and again at trial.

OCGA § 16-8-41 (a) provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he takes property of another . . . by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The statute includes concealed offensive weapons provided there is either a physical manifestation of the weapon or some evidence from which the presence of a weapon may be inferred. *Hughes v. State*, 185 Ga. App. 40, 41 (363 SE2d 336) (1987). The question is whether the defendant's acts created a "reasonable apprehension on the part of the victim that an offensive weapon [was] being used," regardless of whether the victim actually saw the weapon. *Moody v. State*, 258 Ga. 818, 820 (1) (375 SE2d 30) (1989). In the case at bar, the evidence authorized a finding that appellant robbed Perry using " 'a replica, article, or device having the appearance of (an offensive) weapon,' regardless of what it was, [so] as to create a reasonable apprehension on the part of [Perry] that it was an offensive weapon." Id.

(b) With regard to the robbery by intimidation charge, the evidence showed that Debra Smith was employed as a cashier at the same establishment on the night of November 8, 1988, when she observed someone drive slowly by the station twice and disappear around the corner. Smith testified that a man she identified as appellant then appeared at the outside window of the store and requested change for a dollar, and that when she opened the cash register he told her to give him all the money in the drawer. She stated that she was not certain that he actually had a gun, but that he had his hand in his jacket pocket and pointed at her as though he did have a weapon concealed in the pocket so that she thought he had one, and that she was "scared." Appellant was apprehended a short time later,

and a search of his person revealed no offensive weapon.

A conviction for robbery by intimidation, OCGA § 16-8-40 (a) (2), which is a lesser included offense of armed robbery, OCGA § 16-8-41 (a), requires proof that the theft was " 'attended with such circumstances of terror — such threatening by word or gesture, as in common experience, are likely to create an apprehension of danger, and induce a [person] to part with his property for the safety of his person.' " *Jackson v. State*, 175 Ga. App. 843, 844 (1) (334 SE2d 731) (1985). Here, as in *Jackson*, Smith's testimony concerning appellant's gestures and demands was sufficient to establish the element of intimidation. See id.; see also *Ison v. State*, 142 Ga. App. 783-784 (2) (237 SE2d 17) (1977). Accordingly, we find the evidence sufficient under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to authorize appellant's conviction on both charges.

2. Appellant next contends the trial court erred by allowing the admission into evidence of his custodial statement because the evidence showed that he was under the influence of drugs at the time he gave the statement. We do not agree. The detective to whom appellant gave his statement testified that although appellant "appeared to pass out" for a few minutes while he was in custody, the detective did not believe appellant was under the influence of drugs or alcohol at the time he gave the statement. Contrary to appellant's contention, in his statement he admitted having taken drugs at the time of the robberies, but did not state that he was under the influence of drugs at the time he gave the statement. Further, even if appellant was under the influence of drugs while giving the statement it is nonetheless admissible if it was "the product of rational intellect and free will." *Mickens v. State*, 177 Ga. App. 838, 839 (341 SE2d 316) (1986). The evidence adduced at the *Jackson-Denno* hearing (*Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)) authorized a finding that appellant was rational and coherent and that his statement was given knowingly and voluntarily. See *Mickens*, supra.

3. Appellant's challenge to the admission of Perry's identification of him from a photographic lineup is based on his contention that because the subjects' names were written on the backs of the photographs, Perry could have gotten appellant's name from Smith, who already had identified him as the person who robbed her, and then selected his photograph because of his name. This enumeration is without merit, as Perry testified unequivocally that she did not look at the backs of the photographs when making her identification of appellant and that no suggestive comments were made to her, and Smith testified that she did not discuss the robberies with Perry. Accordingly, we find no support for appellant's argument that the photographic lineup was tainted. See *Pope v. State*, 176 Ga. App. 201-202

(1) (335 SE2d 478) (1985).

4. Appellant's contention that Smith's in-court identification of him was tainted by an impermissibly suggestive showup identification is similarly without merit. The record reveals that on the night Smith was robbed, she provided police with a description of the perpetrator and his car. Officer Michael Nichols, who knew appellant and recalled that he had a car which matched Smith's description, went to appellant's known hangouts in search of him. Appellant was located and apprehended shortly thereafter and was returned to the crime scene, where Smith identified him as the man who had robbed her.

Although " '[a]s a general rule, the one-on-one confrontation between the (victim) and the suspect before a trial has been condemned, [cit.] . . . our appellate courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense. (Cits.)' " *Bosworth v. State*, 178 Ga. App. 86, 87 (1) (342 SE2d 22) (1986). Here, the showup was conducted at the crime scene the same night the offense occurred, and Smith's testimony indicated she had sufficient time during the robbery to observe the perpetrator. See id. Accordingly, given the totality of the circumstances, *Talley v. State*, 137 Ga. App. 548, 551 (224 SE2d 455) (1976), we find there was little likelihood of misidentification, and thus find no error in the admission of the identification. See id.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 7, 1990 —
REHEARING DENIED MARCH 22, 1990 — 

*C. Jackson Burch*, for appellant.
*Spencer Lawton, Jr., District Attorney, Barry I. Mortge, Assistant District Attorney*, for appellee.